IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

| | | |
|---|---|---|
| DARRELL L. MYERS | ) | |
| AND | ) | |
| LUCAS MYERS | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:14-cv-00227-JMH |
| | ) | |
| | ) | |
| AGRILOGIC INSURANCE SERVICES, LLC | ) | |
| AND | ) | |
| OCCIDENTAL FIRE AND CASUALTY | ) | |
| INSURANCE COMPANY OF | ) | |
| NORTH CAROLINA, | ) | |
| | ) | |
| DEFENDANTS | ) | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

Defendants, AGRILOGIC INSURANCE SERVICES, LLC ("AgriLogic") and

OCCIDENTAL FIRE AND CASUALTY INSURANCE COMPANY OF NORTH CAROLINA

("Occidental") (collectively, "Defendants"), by counsel, submit the following memorandum of

law in support of their Motion to Dismiss.

**INTRODUCTION**

This is a claim for breach of contract and violation of the Kentucky Unfair Claims

Settlement Practices Act (UCSPA) arising from crop insurance policies issued by AgriLogic[1] to

the Plaintiffs, Darrell L. Myers and Lucas Myers (collectively, "Plaintiffs"), insuring against

certain enumerated perils to Plaintiffs' corn and tobacco crops located in Nicholas County,

_____

[1] AgriLogic is the crop insurance division of Occidental, and in this capacity provides certain administrative services
in conjunction with crop insurance policies underwritten by Occidental.  (Laine Aff. ¶ 2).

Fleming County, and Fayette County.  The policy documents comprising the six (6) crop insurance policies at issue (collectively, the "Policies"), are attached as Exhibit 1 to the Affidavit of Travis Laine ("Laine Affidavit"), AgriLogic's Product Implementation Manager, which is attached hereto as <u>Exhibit A</u>.  Plaintiffs' tobacco claims arising under the Policies were paid prior to the filing of the Complaint.  As such, the only unpaid claims at issue under the Policies are Plaintiffs' claims for alleged damage to their corn crops.

Each of the Policies contains a provision requiring that any claims arising thereunder must be brought within twelve (12) months of the occurrence causing the loss or damage. According to the signed loss documentation submitted to AgriLogic in support of Plaintiffs' underlying corn claims, Plaintiffs claimed to have suffered wind damage to their corn crops on July 25, 2012.  This action, however, was not commenced until May 7, 2014 – well past the twelve (12) month contractual limitations period. Therefore, Plaintiffs' claims for breach of contract and violation of the UCSPA are time-barred as a matter of law.

The fact that Plaintiffs' claims are time-barred necessarily means that Defendants are not obligated to pay under the Policies.  As discussed more fully below, it is well-settled that an action for bad faith under the UCSPA cannot lie in the absence of the insurer's obligation to pay. Thus, in addition to being time-barred by the twelve (12) month contractual limitations period, Plaintiffs' UCSPA claim arising under the Policies also fails as a matter of law on the merits as Plaintiffs cannot satisfy the first necessary element of a bad faith claim under Kentucky law.

Furthermore, Defendants' conduct as alleged by Plaintiffs simply does not constitute the type of "outrageous" and "malicious" behavior required to state a claim under the UCSPA.  As evidenced by the documented correspondence between the parties, AgriLogic articulated valid reasons for investigating Plaintiffs' claims and ultimately denying Plaintiffs' corn claims under

the Policies.  At no point in the claims process did either Defendant engage in conduct that was "outrageous" or "malicious" as would be required to state a claim under the UCSPA.

For the reasons discussed more fully below, Plaintiffs' Complaint fails to state a cause of action against Defendants upon which relief can be granted.  As such, each of Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(6) – treated as a motion for summary judgment under Rule 56 based upon the evidence presented – as a matter of law.[2]

## STATEMENT OF FACTS

The Policies at issue – Policy Nos. 8006530, 8006532, 8006534, 8006535, 8006982, and 8006983 – provided insurance for Plaintiffs' corn and tobacco crops in Nicholas County, Fleming County, and Fayette County.  (Laine Aff. ¶ 3).  The Policies insured Plaintiffs' crops against certain identified perils, including hail and wind.  (*Id.* at ¶ 4).

Each of Plaintiffs' claims for damage to their tobacco crops was paid prior to the filing of this action.  (Laine Aff. ¶ 5).  There are a total of six (6) claims of wind damage to corn that were denied by AgriLogic: Claim No. 00608 (Darrell Myers – Policy No. 8006534); Claim No. 00609 (Darrell Myers – Policy No. 8006535); Claim No. 00610 (Darrell Myers – Policy No. 8006982); Claim No. 00613 (Lucas Myers – Policy No. 8006530); Claim No. 00614 (Lucas Myers – Policy No. 8006532); and Claim No. 00615 (Lucas Myers – Policy No. 8006983).  (*Id.* at ¶ 6). Plaintiffs, through their local insurance agent, submitted Notification of Probable Loss forms (collectively, the "Loss Notices") to AgriLogic for each of the subject claims.  (*Id.* at ¶ 7).  The Loss Notices state that on or about July 25, 2012 wind and/or hail caused damage to Plaintiffs' tobacco and corn crops located in Fleming County, Nicholas County, and Fayette County. (*Id.* at

---

[2] Pursuant to Rule 12(d), where a motion made pursuant to Rule 12(b)(6) presents matters outside of the complaint, the motion is treated as one for summary judgment and disposed of as provided in Rule 56.  Thus, the present motion is, in effect, a motion for summary judgment.

¶ 8).  However, National Weather Service reports indicate no reports of heavy winds or hail in the Commonwealth of Kentucky on July 25, 2012.  (*Id.* at ¶ 9; Ex. 4 to Laine Aff.).

Upon receipt of the Loss Notices, AgriLogic proceeded to investigate the claims and to adjust the alleged losses.  (Laine Aff. ¶ 10).  In conjunction with the adjustment of the subject claims, both Plaintiffs and AgriLogic's independent adjuster, Mike McNew, signed Loss Adjustment Worksheets and Appraisal Worksheets purporting to verify the alleged losses.  (*Id.*).

During the adjustment process, it came to AgriLogic's attention that Mr. McNew improperly adjusted a number of claims in the area, including Plaintiffs' claims.  (Laine Aff. ¶ 11).  Based upon Mr. McNew's repeated errors and failures to follow procedure with respect to a number of AgriLogic's Kentucky claims, AgriLogic thereafter ceased utilizing Mr. McNew as an independent adjuster.  (*Id.*).  In light of the issues with claims adjusted by Mr. McNew, as well as irregularities with certain other Kentucky crop claims in the vicinity of Plaintiffs' farming operations during the same time period, AgriLogic initiated a further investigation of Plaintiffs' claims.  (*Id.*).

On or about November 6-7, 2012, AgriLogic investigators conducted an aerial survey of the area surrounding Plaintiffs' farms.  (Laine Aff. ¶ 12).  Photographs and video taken during the aerial survey indicate clearly that Plaintiffs' corn crops did not sustain wind damage as alleged by Plaintiffs.  (*Id.*; Ex. 5 to Laine Aff.).  The weather data and other evidence gathered during AgriLogic's initial investigation likewise raised serious doubts with regard to the legitimacy of Plaintiffs' claims for wind damage to their corn crops.  (*Id.* at ¶ 13.).

AgriLogic subsequently paid Plaintiffs' tobacco claims under the Policies for hail damage to their tobacco crops located in Fleming, Nicholas, and Fayette County.  (Laine Aff. ¶ 14).  AgriLogic continued to investigate Plaintiffs' claims for wind damage to corn, which

claims remained suspect in light of the evidence gathered during AgriLogic's investigation.  (*Id.* at ¶ 15).  In November of 2012, AgriLogic requested that Plaintiffs provide further information in support of their claims, including production records, photographic evidence, or other reliable evidence substantiating the claims for wind damage to Plaintiffs' corn crops.  (*Id.*).  Plaintiffs failed to provide satisfactory evidence to support their claims.  (*Id.*).

By letter dated May 9, 2013, AgriLogic provided notice to Plaintiffs' counsel that Plaintiffs' claims for wind damage to their corn crop under the Policies were denied. (Laine Aff. ¶ 16; Ex. 6 to Laine Aff.).  The bases for denial cited in AgriLogic's May 9, 2013 letter included the results of the aerial survey and the weather data for the area, each of which confirmed that Plaintiffs' corn crops had not suffered wind damage as alleged.  (*Id.*).  AgriLogic's decision to investigate Plaintiffs' tobacco and corn claims, and its ultimate decision to deny Plaintiffs' corn claims, were made in good faith and based upon an investigation and careful review of underlying claims information, as well as the applicable language in the Policies.  (*Id.* at ¶ 17).

This action was filed on May 7, 2014 in Nicholas Circuit Court asserting claims for breach of contract (Counts I and II), violation of the UCSPA (Count III), and punitive damages (Count IV).[3]  Defendants subsequently removed the action to this Court.  For the reasons discussed more fully below, Plaintiffs' Complaint should be dismissed.

## SUMMARY JUDGMENT STANDARD

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under

---

[3] A request for punitive damages is a mere incident to a cause of action and cannot stand as an independent cause of action.  *See, e.g., Shibeshi v. Alice Lloyd College*, 2011 WL 4970781, *5 (E.D. Ky. 2011).  Thus, to the extent pleaded as a separate Count of the Complaint, Count IV should be dismissed as a matter of law for failure to state a claim upon which relief can be granted.  Further, to the extent that Plaintiffs' underlying tort claims are dismissed by way of the present motion or otherwise, any claim for punitive damages must likewise be dismissed.  *See Russell v. Rhodes*, 2005 WL 736612, *5 (Ky. App. 2005) (holding that it is proper to dismiss claims for punitive damages when all underlying tort claims are dismissed).

Rule 56." Fed. R. Civ. P. 12(d). Under Rule 56, summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact is one which, if proven at trial, would result in a reasonable jury finding in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). While the moving party bears the initial burden of proof for its motion, the party opposing the motion must come forth with sufficient proof to support its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court is to construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-movant may not rely solely upon conclusory allegations, but rather, must come forward with affirmative evidence which establishes its claims and raises an issue of genuine material fact. *Celotex*, 477 U.S. at 324.

## ARGUMENT

**I.     PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT AND VIOLATION OF THE UCSPA ARE TIME-BARRED BY THE TWELVE (12) MONTH LIMITATION PROVISION IN THE POLICIES.**

Even construing the allegations set forth in the Complaint in the light most favorable to Plaintiffs, judgment in favor of Defendants is warranted as a matter of law on Plaintiffs' claims for breach of contract and violation of the UCSPA because this action was not commenced within the contractual limitations period set forth in the Policies. Section 16 of the General Provisions ("Section 16"), which is part of each of the Policies at issue, provides in pertinent part as follows:

> **16. SUIT AGAINST US.**
>
> You cannot bring suit or action against us unless you have complied with all of the policy provisions.

> If you do enter suit against us, you must do so within 12
> months of the occurrence causing loss or damage.

Per the written Loss Notices submitted to AgriLogic, the alleged damage to Plaintiffs' tobacco and corn crops occurred on July 25, 2012.  This is the "occurrence" which caused the loss or damage underlying Plaintiffs' claims for breach of contract (Counts I and II) and violation of the UCSPA (Count III).  This lawsuit was not filed until May 7, 2014, more than twenty-one (21) months after the July 25, 2012 date of loss.  As a result of this delay, Plaintiffs' claims against Defendants as alleged in Counts I, II, and III of the Complaint are time-barred as a matter of law and must be dismissed.

Kentucky courts have long held that insurance contract provisions limiting the time within which an insured may sue are valid and enforceable.  *See Edmondson v. Pa. Nat'l Mut. Ins. Co.*, 781 S.W.2d 753 (Ky. 1989) ("We have previously recognized the validity of insurance contract provisions requiring as a condition to sue that the action must be 'commenced within the time specified by the policy.'") (citations omitted).  Further, numerous Kentucky decisions have held that a twelve month limitations period in which to bring a claim under an insurance policy is reasonable.  *See Webb v. Kentucky Farm Bureau Ins. Co.*, 577 S.W.2d 17 (Ky. App. 1979) (upholding contractual twelve month limitation period in insurance policy); *Stansbury v. Smith*, 424 S.W.2d 571 (Ky. 1968) (same).   In addition to Kentucky caselaw, a Kentucky statute specifically allows foreign insurance companies to limit the time for commencing actions against them so long as the limitations period is not less than one (1) year.  *See* KRS 304.14-370.  There is thus no question that the twelve (12) month limitations period set forth in Section 16 of the Policy is valid and enforceable under Kentucky law.

In *Ashland Finance Company v. Hartford Accident & Indemnity Company*, 474 S.W.2d 364 (Ky. 1971), Kentucky's highest court cautioned that a trial court should be careful not to

substitute its own notion of fairness when enforcing such a provision.  There, as here, the question was the enforceability of a contractual one year limitations period.  In the Court's words:

> The provision of the bond here is clear and unambiguous; it says that suit must be brought within one year after discovery of the loss.  We can find no valid basis for pronouncing that it does not mean what it plainly says.  And even if fairness were the test we see nothing unfair in including some no-suit time in the overall period allowed for bringing suit.

*Id.* at 366.

It is also important to note that when determining the date upon which the contractual limitations period in a policy of insurance begins to run, Kentucky courts considering policy language similar to that in Section 16 of the Policies have repeatedly held that the limitations period runs *from the date of the insured loss* and not from the date of denial of the claim.  For instance, in *Edmonson* the fire insurance policy at issue contained the following language which is strikingly similar to the language in Section 16: "No suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs."  *Id.* at 754.  Although the denial of the claim under the subject policy did not take place until months after the fire that caused the underlying loss, the one year limitations period was deemed to run from the date of the fire, not from the date that the insurance company denied coverage.  *Id.* at 756.  *See also Webb*, 577 S.W.2d at 17-18 (interpreting contractual twelve month limitations period in fire insurance policy as running from date of fire); *Hale v. Blue Cross Blue Shield of Ky.*, 862 S.W.2d 905, 907 (Ky. 1993) (upholding one year contractual limitations period in group health insurance policy that ran from date of date of filing of medical claim).

The Sixth Circuit Court of Appeals, interpreting Kentucky law, addressed a similar issue in *Smith v. Allstate Ins. Co.*, 403 F.3d 101 (6th Cir. 2005). There, the insureds filed a claim for fire loss to their home. The policy language in that case, like the language in Section 16, provided that "Any suit or action must be brought within one year after the inception of loss or damage." After receiving notice of the loss, the insurance company demanded additional information and examinations under oath from the insureds. Following the completion of its investigation, the insurance company denied the claim roughly seventeen months after the initial loss. The insureds filed suit against the insurance company within one year of the denial of the claim, but more than one year and nine months after the fire. The district court granted summary judgment in favor of the insurer based upon the limitations period contained in the policy and the insureds appealed.

On appeal, the insureds maintained that the contractual limitations period should have been tolled from the time the insurer received a notice of loss until the time that it refused to pay. The Sixth Circuit Court of Appeals rejected this argument, however, as not being supported by Kentucky case law. As stated by the Court:

> Kentucky's highest court, in *Ashland Finance* and *Edmondson*, and its intermediate appellate court, in *Webb* and *Hale*, have given effect to limitations periods expiring one year after the insured's loss (or discovery of the loss). Neither these cases nor any other Kentucky case of which we are aware suggest that the limitations period can be tolled until the denial of the insured's claim.

*Id.* at 406.

The *Smith* decision makes clear that the twelve (12) month limitations period in the Section 16 applies not only to his claims for breach of contract, but also to his claim for violation of the UCSPA. That claim, like Plaintiffs' breach of contract claims, accrued for limitations purposes on the date of loss and was not tolled until the date that AgriLogic denied the corn

claim.  Although in *Smith* the insureds' bad faith claim against Allstate was bifurcated from their breach of contract claim[4], the Court nonetheless recognized that, "Kentucky courts have repeatedly enforced insurance contract provisions under which the time for suit began to run before the insured had a right to sue.  *Id.* at 405 (citing *Ashland Finance Co. v. Hartford Accident & Indemnity Co.*, 474 S.W.2d 364, 365-66 (Ky. 1971)).

With regard to Plaintiffs' UCSPA claim, the takeaway from *Smith* is that the parties to an insurance contract can agree to modify not only the limitations period for claims against the insurer, *but also the date upon which those claims accrue*.  But for Section 16, Plaintiffs' claims for breach of contract and violation of the UCSPA would both accrue on the date that AgriLogic denied the underlying claims.  In light of Section 16, however, the accrual date was modified to run from the date of "the occurrence causing loss or damage."  This language in Section 16 is clear and unambiguous and thus must be enforced as written.  Simply put, the language in Section 16 of the Policy validly establishes the limitations period as running from one year from the date of loss for purposes of Plaintiffs' claims arising from breach of the insurance contract and there is no valid basis for treating Plaintiffs' claim under the UCSPA differently.

The cases cited above are dispositive of the claims for breach of contract (Counts I and II) and violation of the UCSPA (Count III) asserted by Plaintiffs in their Complaint against Defendants.  Pursuant to Section 16 of the Policies, by contractual agreement each of these claims accrued for limitations purposes on July 25, 2012, the alleged date of loss.  Based upon the unambiguous language of the Policies and the fact that Kentucky's state and federal courts have repeatedly enforced contractual limitations periods requiring suit to be brought within one

---

[4] In *Smith*, the insureds' bad faith claim against Allstate was premised exclusively upon Allstate's attempt to enforce the contractual limitations period.  Since the Sixth Circuit upheld the validity of the contractual limitations period, this holding was dispositive of the insureds' bad faith claim on the merits and thus the Court was not required to address the question of whether the limitations period also applied to the bad faith claim.

year of the underlying loss, Counts I, II, and III of Plaintiffs' Complaint fail to state a claim upon which relief can be granted and must therefore be dismissed.

## II.   PLAINTIFFS' CLAIM FOR VIOLATION OF THE UCSPA MUST BE DISMISSED AS A MATTER OF LAW.

Count III of the Complaint alleges that Defendants have violated the UCSPA.  In order to establish a violation of the UCSPA in Kentucky (commonly referred to as "bad faith"), a plaintiff must first make an initial showing that the insurer engaged in "intentional misconduct or reckless disregard of the rights of an insured or claimant" that rises to the level of "outrageous" conduct sufficient to support an award of punitive damages.  *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).   If the plaintiff is able to meet this high threshold standard, the plaintiff must then establish the following three elements of a bad faith claim:

    (1)    the insurer must be obligated to pay;

    (2)    the insurer must lack a reasonable basis in law or fact for denying the claim; and

    (3)    it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890 (internal quotation marks omitted).  As set forth more fully below, Plaintiffs' claims under the UCSPA fail as a matter of law since, in addition to being time-barred, Plaintiffs cannot possibly establish the requisite elements of a bad faith claim under Kentucky law.

### A.   <u>Since Plaintiffs' Corn Claims Under the Policies are Time-Barred as Discussed in Part I, *Supra*, Defendants are not Obligated to Pay and Plaintiffs Thus Cannot Satisfy the First Element of the *Wittmer* Test.</u>

The first necessary element for a bad faith claim under Kentucky law is that the insurer must be "obligated to pay."  *Wittmer*, 864 S.W.2d at 890.  In *Davidson v. American Freightways,*

*Inc.*, 25, S.W.3d 94 (Ky. 2000), the Kentucky Supreme Court elaborated on this requirement by stating:

> The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third party, with respect to a claim which the insurance company is *contractually obligated* to pay. Absent a contractual obligation, there is simply no bad faith cause of action, either by common law or by statute.

*Id.* at 100 (emphasis in original).

The Kentucky Court of Appeals later applied this principle in *Kentucky National Insurance Company v. Shaffer*, 155 S.W.3d 738 (Ky. 2005). In that case, an insurer was sued for bad faith for failing to settle within the policy limits. Due to a coverage exclusion, however, the insurer was not obligated to pay under the policy. The Court of Appeals held that that since the insurer was not obligated to pay, it could not be held liable for bad faith. As stated by the Court of Appeals: "[W]e believe it is sound principle that, in the absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith." *Id.* at 742.

Although there is no reported Kentucky state court decision applying the *Davidson* and *Shaffer* holdings in the context of a failure to file suit within the contractual limitations period, a recent unreported Kentucky federal decision authored by Judge Simpson did exactly this. In *Heil v. State Farm Fire & Casualty Company*, 2012 WL 3637652 (W.D. Ky. 2012), the insureds made a claim against State Farm arising from wind and lightning damage to their home, which damage was later exacerbated by vandalism and other damage to their personal property. Alleging that the repairs initiated by State Farm were defective and that State Farm had failed to make certain payments required under the policy, the insureds subsequently brought suit against State Farm for, among other things, breach of contract and bad faith. The policy at issue in *Heil* contained a contractual limitations period that, like Section 16 of the Policies in the case *sub*

*judice*, required any claim against State Farm to be brought "within one year after the date of loss or damage." With regard to the breach of contract claim, Judge Simpson, citing *Webb*, held that the claim was time-barred as it was brought more than two years after the date of loss.

After dismissing the breach of contract claim, Judge Simpson next addressed State Farm's argument that the insureds' bad faith claim should be dismissed as failing to satisfy the first element of the *Wittmer* test because, in light of the insureds' failure to file suit within the one year limitations period in the policy, State Farm was not "obligated to pay." After citing the holdings in *Davidson* and *Shaffer*, Judge Simpson granted summary judgment in favor of State Farm on the bad faith claim as well, noting that "Plaintiffs have not pointed to any provision of the Policy or pointed to any other evidence that establishes Defendant is required to pay a claim under the terms of the Policy." *Id.* at *4. *See also Philadelphia Ins. Co. v. Youth Alive, Inc.*, 857 F.Supp.2d 647 (W.D. Ky. 2012) (dismissing bad faith claim against insurer for failure to satisfy first element of *Wittmer* test in light of ruling that no coverage existed under policy).

The *Heil* decision is directly on point and stands for the proposition that if an insured fails to bring a claim within the contractual limitations periods and thus there is no obligation of the insurer to pay, then the insured has failed to satisfy the first element of the *Wittmer* test. Here, as in *Heil*, Defendants are not obligated to pay Plaintiffs' corn claims under the Policies because Plaintiffs failed to file suit within the twelve (12) month limitations period set forth in Section 16. Plaintiffs therefore cannot satisfy the first element of the *Wittmer* test and their claim for violation of the UCSPA must be dismissed as a matter of law.

**B.** **In Light of the Well-Documented Reasons Supporting Defendants' Actions, Plaintiffs Cannot Possibly Satisfy the High Evidentiary Threshhold for a Bad Faith Claim Under Kentucky Law.**

The standard for establishing a claim of bad faith under Kentucky law is extraordinarily high. There is no such thing as a technical violation of the UCSPA. *Wittmer*, 864 S.W.2d at 890. Instead, the *Wittmer* decision requires a plaintiff to present proof that "there was conduct that is *outrageous*, because of the *defendant's evil motive* or his *reckless indifference* to the rights of others." *Wittmer*, 864 S.W.2d at 890 (emphasis added). In *United Services Auto Association v. Bult*, 183 S.W.3d 181 (Ky. App. 2003), the Kentucky Court of Appeals summarized the standard for a bad faith claim as follows:

> The evidentiary threshold is high indeed. Evidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights. Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury. *Evidence of mere negligence or failure to pay a claim in a timely fashion will not suffice to support a claim of bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown*.

*Id.* at 186 (emphasis added).

Defendants in this case did not engage in "outrageous conduct" or act with "malice" in their handling of Plaintiffs' claims. Rather, as is evident from the affirmative proof offered in support of the present motion, Plaintiffs' claims for damage to their corn crop were denied based upon overwhelming photographic evidence that their corn crops did not suffer wind damage as alleged. Moreover, Plaintiffs' claims are refuted by the objective weather data for the alleged date of loss. In light of this evidence, it simply cannot be said that Defendants acted with "malice" in denying the claims at issue. As such, and for the other reasons set forth more fully above, this claim must be dismissed as a matter of law.

14

## **CONCLUSION**

Section 16 of the Policy states unambiguously that any action against Defendants must be instituted within twelve (12) months of the occurrence causing loss or damage, and Kentucky's courts have long recognized the validity of such provisions.  Furthermore, similarly worded contractual limitations provisions have been consistently interpreted by Kentucky courts as running from the date of the insured loss, rather than from the date that the claim was denied. According to the Loss Notices submitted to AgriLogic, the alleged damage to Plaintiffs' corn and tobacco crops occurred on July 25, 2012.  As this action was not commenced until May 7, 2014 – more than twenty-one (21) months following the occurrence causing loss or damage – Plaintiffs' claims for breach of contract (Counts I and II) and violation of the UCSPA (Count III) are time-barred as a matter of law.

In light of the fact that Plaintiffs' claims are time-barred, Plaintiffs' claim for bad faith also fails on separate grounds since they cannot show that AgriLogic has any "obligation to pay" the corn claims under the Policies as required by the first element of the *Wittmer* test.  Finally, even if Plaintiffs were able to satisfy the first element of *Wittmer*, the affirmative testimonial and documentary evidence submitted herewith makes clear that Plaintiffs cannot possibly make the requisite showing of "outrageous" conduct and "malice" required to sustain a claim for bad faith under the UCSPA.

Applying the summary judgment standard to this Rule 12(b)(6) Motion to Dismiss as required by Rule 12(d), Defendants are entitled to summary judgment as a matter of law with respect to each of Plaintiffs' claims.  Accordingly, and for the reasons set forth more fully above, Plaintiffs' Complaint should be dismissed with prejudice.

Respectfully submitted,


/s/ Bradley E. Cunningham
Mark S. Fenzel
mfenzel@middletonlaw.com
Bradley E. Cunningham
bcunningham@middletonlaw.com
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, KY 40202
Telephone (502) 584-1135
Facsimile (5020 561-0442
*Counsel for Defendants*

16