UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| DARREL L. MYERS, et al., )<br>)<br>Plaintiffs, )<br>) <br>v. )<br>)<br>AGRILOGIC INSURANCE SERVICES, )<br>LLC, et al. )<br>)<br>Defendants. )<br>)<br>) | Civil Case No.<br>14-cv-227-JMH<br><br><br>**MEMORANDUM OPINION AND<br>ORDER** |

\*\*\*

This matter is before the Court upon the Motion to Dismiss [DE 4] for failure to state a claim of Defendants Agrilogic Insurance Services, LLC ("Agrilogic"), and Occidental Fire and Casualty Insurance Company of North Carolina ("Occidental"). Plaintiffs have filed a Response [DE 5] stating their objections to the Motion, and Defendants have filed a Reply [DE 9] in further support of their Motion. This Motion is ripe for decision and, for the reasons stated below, shall be granted.

**I.**

This is a claim for breach of contract and violation of the Kentucky Unfair Claims Settlement Practices Act (UCSPA) arising from crop insurance policies issued by AgriLogic, the crop insurance division of Occidental, to the Plaintiffs, insuring

against certain enumerated perils to Plaintiffs' corn and tobacco crops located in Nicholas County, Fleming County, and Fayette County, Kentucky. The relevant policy documents comprise six (6) crop insurance policies at issue (collectively, the "Policies"). Plaintiffs' tobacco claims arising under the Policies were paid prior to the filing of the Complaint. As such, the only unpaid claims at issue under the Policies are Plaintiffs' claims for alleged damage to their corn crops.

Each of the Policies contains a provision requiring that any claims arising thereunder must be brought within twelve (12) months of the occurrence causing the loss or damage. According to the signed loss documentation submitted to AgriLogic in support of Plaintiffs' underlying corn claims, Plaintiffs claimed to have suffered wind damage to their corn crops on July 25, 2012. Agrilogic investigated their claim, first, through its independent adjuster, Mike McNew, and, after discovering that he had improperly adjusted Plaintiffs' and other's claims in the area, through additional inquiries concerning local weather and aerial surveys of the subject crops. Plaintiffs' claim was denied on May 9, 2013. This action, however, was not commenced until May 7, 2014.

**II.**

To survive a motion to dismiss, a plaintiff must demonstrate "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's allegations must be sufficient to raise his or her claims above a speculative level. *Id.* Neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" nor "the mere possibility of misconduct" is sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is no less true when a plaintiff is proceeding *pro se*. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

In considering a motion to dismiss, the court may rely on documents attached to or referred to in a complaint without converting the motion into a motion for summary judgment, as documents attached to pleadings are considered part of the pleading itself. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *see also* Fed. R. Civ. P. 10(c). In this instance, Plaintiffs' Complaint references the insurance policies written by Agrilogic and under which they seek relief, and the Court may consider them without converting the motion to dismiss into a motion for summary judgment.

3

However, in part, Defendants have filed a Motion to Dismiss for Failure to State a Claim that presents matters outside the pleadings for the Court's consideration. In such situations, the Federal Rules of Civil Procedure require the motion to dismiss to be construed as a motion for summary judgment. Fed. R. Civ. P. 12(d). Accordingly, the Court will look to the rules governing summary judgment in evaluating those aspects of Defendants' Motion. Fed. R. Civ. P. 56(a).

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law. *Id*. Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence

4

on which the jury could reasonably find for the [non-moving party]." *Id*. at 252.

### III.

The first question before this Court is whether, as a matter of law, the contractual limitations clause contained in the subject insurance policy is enforceable and whether it bars Plaintiffs' claims for breach of contract and violation of the Kentucky Unfair Claims Settlement Practices Act in this matter. On the undisputed facts and in light of the applicable law, the Court concludes that the one year limitations clause is enforceable with respect to the claims of breach of contract and that Plaintiff's claim for breach of contract is barred by the application of the limitations clause and the passage of time as set forth below. As explained below, the Court need not reach the issue of whether it would bar the claim for violation of the UCSPA, as that claim fails as a matter of law on other grounds.

Substantive Kentucky law applies in this diversity case. *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citing *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1049 (6th Cir.1992); *Nat Harrison Assoc., Inc. v. Louisville Gas & Elec. Co.*, 512 F.2d 511, 513 (6th Cir.1975)). Under Kentucky law, the "the construction of insurance contract provisions comprise questions of law for the court, unless disputed facts are involved." *Id*. (citing *Perry's Adm'x v.*

5

*Inter-Southern Life Ins. Co.*, 71 S.W.2d 431, 433 (Ky. 1934)). Further, the terms and conditions of a contract of insurance control the contractual relationship between the insurer and insured, absent contravention of public policy or statute. *See Meyers v. Kentucky Med. Ins. Co.*, 982 S.W.2d 203, 209–10 (Ky. Ct. App. 1997) (quoting *Cheek v. Commonwealth Life Ins. Co.*, 126 S.W.3d 1084, 1089 (1939)).

In this instance, no one disputes that the parties entered into a contract containing a one-year limitation on actions, measured from the time of loss. Further, on the facts before it, the Court concludes that the one-year limitation term in the contract is enforceable. *See, e.g.*, KRS 304.14-370 (permitting insurance companies in Kentucky to include coverage terms setting a limitations period of no less than one (1) year); *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 404 (6th Cir. 2005) (citing *Edmondson v. Penn. Nat'l Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 756 (Ky. 1989); *Webb v. Ky. Farm Bureau Ins. Co.*, 577 S.W.2d 17, 18-19 (Ky. Ct. App. 1978)) ("Contract provisions limiting the time within which an insured may sue are generally valid under Kentucky law.").

Plaintiffs argue that the one month period which remained after the denial of their claim in which to bring suit hardly provided them with a reasonable time in which to hire counsel, investigate, and file suit, relying on *Dunn v. Gordon Food*

6

*Servs.*, 780 F.Supp.2d 570, 573 (E.D. Ky. 2011). They suggest that the contractual limitations period should have been tolled during Defendants' investigation, but they provide no legal authority to support this conclusion. Absent some reason to suppose that Kentucky courts would embrace such a rule, the Court rejects this argument.

Next the Court considers the impact of the application of the one-year limitations period in light of the undisputed facts -- that (1) the subject claim arises from wind damage to Plaintiffs' corn crops on July 25, 2012, (2) the claim was denied on May 9, 2013, and (3) they filed suit on May 7, 2014. This matter was filed out of time if the Court calculates the limitations period from the date of the wind damage, which is the only loss averred in this action. As the contract's own terms bar the suit before the Court, the Court will dismiss Plaintiffs' claim for breach of contract and enter judgment in favor of Defendants.

**IV.**

The Court would ordinarily consider next whether the contract provision bars the claim for violation of the USPCA straightforwardly or because it would bar any consideration of Defendants' obligation to pay. However, the Court concludes that it need not reach that issue as Plaintiffs' claim for violation of the USPCA fails as a matter of law in light of the

7

undisputed facts before the Court. To state a claim under Kentucky's UCSPA, KRS 304.12-230[1], a plaintiff "must meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or claimant' by the insurance company that would support an award for punitive damages.'" *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1999) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). Only once the plaintiff has made this initial showing, he or she must "establish three elements to maintain a bad faith claim, regardless of whether the claim is brought under common law or statute: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521 (6th Cir. 2006) (citing *Wittmer*, 864 S.W.2d at 890). "Evidence of mere negligence or failure to pay a claim in a timely fashion will not suffice to support a claim of bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element

---

[1] The UCSPA denounces as unfair claims settlement practices, among other things, "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information" and "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear ." KRS 304.12-230(4), (6).

8

of malice or flagrant malfeasance must be shown." *United Servs. Auto Assoc. v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003).

Defendants argue that there is no evidence that they engaged in conduct that was "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Wittmer*, 864 S.W.2d at 890. In support of their Motion, Defendants have set forth the Affidavit of Travis Lane, in which they establish that, while the original Loss Adjustment Worksheets and Appraisal Worksheets prepared and signed by AgriLogic's independent adjuster, Mike McNew, purported to verify losses, Agrilogic learned that McNew had improperly adjusted a number of claims in the area, including Plaintiffs' claims.  Thus, Agrilogic engaged in further investigation, which included review of the National Weather Service's data which revealed that there were no reports of heavy winds or hail in the Commonwealth of Kentucky on July 25, 2012, and aerial surveys of Plaintiffs' crops conducted in November of 2012, photographs from which appear to show Plaintiffs' fields.  Agrilogic also requested that Plaintiffs provide further information to support their claim of loss, such as production records, photographs, or other reliable evidence. There is no record that such additional evidence was provided by Plaintiffs in the materials before this Court.  Ultimately, having considered the information obtained through its

9

investigation, Agrilogic concluded that there was no evidence satisfactory to support Plaintiff's claim for loss.

In their Response, Plaintiffs do not dispute these elements of the investigation or even that the Defendants reached their conclusions as a result of the investigation, stating only that "the documentation submitted by Defendants do[es] no[t] on its fac[e] dispute any claims that Plaintiff has asserted." The Court is not persuaded that this is the case. Even accounting for the possibility that Defendants got the answer wrong and Plaintiffs actually did suffer some loss of their corn crop due to wind damage, there is no evidence which suggests that Agrilogic reached its conclusion as a result of outrageous actions.

This case differs, for example, from that described in *Phelps v. State Farm*, in which the Sixth Circuit Court of Appeals found that Phelps presented sufficient evidence of lowball offers, delay tactics and questionable claims-handling practices to meet the threshold inquiry for a USPCA claim. *Phelps v. State Farm*, 736 F.3d 697 (6th Cir. 2012). First, Phelps demonstrated that State Farm's initial offer of $25,000 not only failed to reasonably account for her pain and suffering and future wage loss, it was "just barely above the low-end of both [State Farm's] own evaluation of the claim ($24,620 to $49,620) and Phelps's documentation of medical and wage loss

10

costs ($22,620.22)." *Id*. at 705. Second, Phelps showed that State Farm delayed settlement of the claim for three years. *Id*. at 705-06. Specifically, State Farm refused to make an initial valuation of Phelps's claims until it reviewed medical records relating to a prior injury but made no effort to obtain these records for over six months. *Id*. State Farm also repeatedly refused to disclose its insured's policy limits, switched claims adjusters four times without explanation, refused to increase its offer without documentation of additional damages and failed to include facts in the claim file that would support a jury verdict in Phelps's favor. *Id*. at 706-07.

There are no such facts in this matter from which the Court conclude that Agrilogic sought to accomplish anything more nefarious than an effort to reach a reasoned decision on the claim based on facts. Thus, the Court agrees with Defendants that, as a matter of law, Plaintiffs cannot meet the high evidentiary standard required to support a USPCA claim because the record, which is undisputed, shows no evidence of an evil motive or reckless indifference to Plaintiffs' rights. Instead, AgriLogic communicated regularly – if infrequently – with Plaintiffs, engaged in further investigation only when the circumstances warranted further action, and attempted to remedy what it believed to be McNew's errors. Simply engaging in further investigation, including examining the allegedly damaged

11

crop (i.e., the aerial surveys) and requesting further documentation, including harvesting or marketing records for the insured crop, is permitted by the General Provisions of the Policy of Insurance. [*See* Section 3.a.(3) and (4), Agreement to Insure, DE 4-4 at 7, Page ID#: 48.] These actions do not suggest outrageous conduct.

Because Plaintiffs have failed to show evidence of malfeasance sufficient to satisfy Kentucky law's threshold inquiry for bad faith claims, the Court need not consider the parties' remaining arguments regarding Defendants obligation to pay. For all of these reasons, Defendants are entitled to summary judgment on the bad faith claim.

**V.**

For all of the reasons stated above, summary judgment in favor of Defendants is appropriate. Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss [DE 4], construed in part as a Motion for Summary Judgment, is **GRANTED**.

This the 30th day of March, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge